Robert B. Carey (SBN 011186)
John DeStefano (SBN 025440)
Tory Beardsley (SBN 031926)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, AZ  85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
        johnd@hbsslaw.com
        toryb@hbsslaw.com

Brett L. Slavicek (SBN 019306)
James Fucetola (SBN 029332)
Justin Henry (SBN 027711)
**THE SLAVICEK LAW FIRM**
5500 North 24th Street
Phoenix, Arizona 85016
Telephone: (602) 285-4435
Facsimile: (602) 287-9184
Email: brett@slaviceklaw.com
        james@slaviceklaw.com
        justin@slaviceklaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin Heisler, on behalf of himself and a class of those similarly situated, and Crystal Lopez, in her individual capacity,<br><br>                    Plaintiffs,<br><br>v.<br><br>Liberty Mutual Personal Insurance Company, a New Hampshire Corporation,<br><br>                    Defendant. | Case No. 23-cv-00629-DLR<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**(DECLARATORY JUDGMENT)<br>(BREACH OF CONTRACT)<br>(BAD FAITH)** |

Plaintiffs Crystal Lopez and Kevin Heisler for their Complaint against Defendant Liberty Mutual Personal Insurance Company ("Liberty Mutual") allege as follows:

## I.    THE PARTIES

1.    Kevin Heisler is a single man.  At all relevant times, Plaintiff Heisler was an insured on an insurance policy with Defendant Liberty Mutual providing, among other coverages, uninsured and underinsured motorist coverage covering multiple vehicles on the same policy.

2.    Crystal Lopez is a married woman. At all relevant times, Plaintiff Lopez was an insured on an insurance policy with Defendant Liberty Mutual providing, among other coverages, uninsured and underinsured motorist coverage covering multiple vehicles on the same policy.

3.    Defendant Liberty Mutual is a corporation incorporated under the laws of the State of New Hampshire, and is duly licensed to administer insurance in the State of Arizona.

## II.    NATURE OF THE ACTION

4.    This matter concerns the unlawful denial of "Stacked Uninsured Motorist Coverage" and "Stacked Underinsured Motorist Coverage" to a class of insureds entitled to Uninsured Motorist and Underinsured Motorist coverage on policies issued by Defendant Liberty Mutual in Arizona.

5.    For purposes of this Complaint, "Stacked Uninsured Motorist Coverage" generally refers to the ability of insureds to obtain benefits under their Uninsured Motorist Coverage when there is one policy issued by Defendant Liberty Mutual providing Uninsured Motorist Coverage on multiple vehicles.

6.    For purposes of this Complaint, "Stacked Underinsured Motorist Coverage" generally refers to the ability of insureds to obtain benefits under their Underinsured Motorist Coverage when there is one policy issued by Defendant Liberty Mutual providing Underinsured Motorist Coverage on multiple vehicles.

7.      The denial of Stacked Uninsured Motorist Coverage and Stacked Underinsured Motorist Coverage is contrary to well-established Arizona law as well as the language of the Liberty Mutual policy.  Moreover, the denial is contrary to Defendant Liberty Mutual's custom and practice when insureds specifically demand Stacked Uninsured and/or Stacked Underinsured Motorist Coverage.  As such, the denial of benefits is unreasonable, is not "fairly debatable," and instead places Defendant Liberty Mutual' own interests ahead of the class of policyholders and insureds.

**A.      Kevin Heisler**

8.      On April 2, 2022, Kevin Heisler was a pedestrian crossing the street when he was struck by a vehicle driven by Brandon Herbert.

9.      Non-party Brandon Herbert was partially at fault for causing the collision.

10.      As a direct and proximate result of the collision, Plaintiff Heisler suffered physical, emotional and economic injuries including, but not limited to, left ankle, left shoulder, left arm and multiple rib fractures as well as cervical and lumbar fractures in his back.

11.      As a direct and proximate result of the collision, Plaintiff Heisler incurred reasonable and necessary medical expenses exceeding $520,000 and is likely to incur future medical expenses of no less than $540,000.

12.      Non-party Brandon Herbert held a policy with GEICO providing bodily injury liability coverage in the amount of $25,000 per person, subject to an aggregate limit of $50,000 per collision.

13.      GEICO tendered its available bodily injury liability limits of $25,000 to Plaintiff Heisler.

14.      Non-party Brandon Herbert did not have any additional bodily injury liability, personal injury umbrella liability, or any other insurance coverage which might have paid for the damages suffered by Plaintiff Heisler as a result of the collision.

15.      At the time of the collision, The Heisler Family Trust and Karen Heisler— Kevin Heisler's mother—held a policy with Defendant Liberty Mutual covering (1) a 2010

Ford F-150; and (2) a 2016 Lincoln MKX under Policy No. AOV-261-558536-70 1 2, effective August 7, 2021 through August 7, 2022.  Coverage during this period consisted of, among other things, Uninsured Motorist Coverage on each vehicle in the amount of $250,000 per person and Underinsured Motorist Coverage on each vehicle in the amount of $50,000 per person.  A true and correct copy of the Liberty Mutual Declarations Page is attached hereto as **Exhibit A**.

16.    Defendant Liberty Mutual charged $9 for the Uninsured Motorist Coverage and $32 for the Underinsured Motorist Coverage on the 2010 Ford F-150.  *See* Exhibit A.

17.    Defendant Liberty Mutual charged $9 for the Uninsured Motorist Coverage and $49 for the Underinsured Motorist Coverage on the 2016 Lincoln MKX.  *See* Exhibit A.

18.    At all relevant times, Kevin Heisler resided at his parents' address.

19.    Plaintiff Heisler is an "insured" under the terms and conditions of the Uninsured Motorist Coverage and Underinsured Motorist Coverage of the Liberty Mutual policy.

20.    Non-party Brandon Herbert's vehicle is an "underinsured motor vehicle" under the terms and conditions of the Liberty Mutual policy as well as Arizona law.

21.    On October 19, 2022, Plaintiff Heisler submitted a claim to Defendant Liberty Mutual seeking Underinsured Motorist benefits on all vehicles insured on the policy.  The deadline to pay the available policy limits was November 11, 2022.

22.    Thereafter, Defendant Liberty Mutual paid the policy limits—$50,000.00— on **one of the vehicles** covered under Policy No. AOV-261-558536-70 1 2.

23.    Defendant Liberty Mutual failed and/or refused to pay the remaining policy limits properly owed on the other vehicles on the Liberty Mutual policy.

24.    Instead, Defendant Liberty Mutual disclaimed any additional Underinsured Motorist Coverage on the policy.  Specifically, Defendant Liberty Mutual alleged Stacked Underinsured Motorist Coverage was not available on the Liberty Mutual policy relying on policy language that fails to preclude Stacked Underinsured Motorist Coverage.

HAGENS BERMAN
SOBOL SHAPIRO LLP
Attorneys at Law
Phoenix

- 3 -    FIRST AMENDED COMPLAINT

25.    The Limit of Liability clause provides:

**LIMIT OF LIABILITY**

**A.**    The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one accident.    Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

This is the most we will pay regardless of the number of:

1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the Schedule or in the Declarations; or
4. Vehicles involved in the accident.

*See* Exhibit C, Liberty Mutual Policy at 031.[1]

26.    The Limit of Liability language does not preclude Stacked Uninsured Motorist Coverage or Stacked Underinsured Motorist Coverage.    *See State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 331 (1995); *see also Heaton v. Metropolitan Group Prop. And Cas. Ins. Co.*, 2021 WL 6805629 (D.Ariz. Oct. 19, 2021).

27.    Even if the Limit of Liability language was sufficient to preclude Stacked Uninsured Motorist Coverage or Stacked Underinsured Motorist Coverage—it is not—the Limit of Liability language does not inform insureds of their right to select which coverage will apply in violation of A.R.S. § 20-259.01(H).

28.    The Two or More Autos Insured clause provides:

**TWO OR MORE AUTOS INSURED; TWO OR MORE AUTO POLICIES**

---

[1] The Heisler policy uses the same endorsements for UM and UIM coverage as the Lopez policy, discussed below.

> If this policy insures two or more autos or if any other insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto.  In no event shall the limit of liability of two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to your (sic) or any **insured**.

*See* Exhibit C, Liberty Mutual Policy at 024.

29.     The Two or More Autos Insured clause does not preclude Stacked Uninsured Motorist Coverage or Stacked Underinsured Motorists Coverage.  *See State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 331 (1995); *see also Heaton v. Metropolitan Group Prop. and Cas. Ins. Co.*, 2021 WL 6805629 (D.Ariz. Oct. 19, 2021).

30.     Even if the Two or More Autos Insured language was sufficient to preclude Stacked Uninsured Motorist Coverage or Stacked Underinsured Motorist Coverage—it is not—the Two or More Autos Insured language does not inform insureds of their right to select which coverage will apply in violation of A.R.S. § 20-259.01(H).

31.     Defendant Liberty Mutual did not advise Plaintiff Heisler, in writing, of his right to select which coverage would apply within 30 days of receiving notice of the collision as required by A.R.S. § 20-259.01(H).

32.     Accordingly, Stacked Uninsured Motorist Coverage and Stacked Underinsured Motorist Coverage is permitted. *See* A.R.S. § 20-259.01(H); *see also Schwallie v. American Family Mut. Ins. Co.*, 2013 WL 4478697 (D.Ariz. Aug. 20, 2013).

**B.     Crystal Lopez**

33.     On November 11, 2020, Crystal Lopez was driving her 2003 Toyota Avalon southbound on South Kolb Road when she was lawfully proceeding through the intersection at East Valencia Road in Tucson, Arizona.

34.     Non-party Patricia Sue Miller was travelling westbound on East Valencia Road when she ran a red causing a collision with Plaintiff Lopez's vehicle.

HAGENS BERMAN
SOBOL SHAPIRO LLP
Attorneys at Law
Phoenix

- 5 -                    FIRST AMENDED COMPLAINT

35.     As a direct and proximate result of the collision, Plaintiff Lopez suffered physical, emotional and economic injuries including, but not limited to, a fractured left ulna.

36.     As a direct and proximate result of the collision, Plaintiff Lopez incurred reasonable and necessary medical expenses in excess of $75,000.

37.     Non-party Patricia Sue Miller was solely at fault for causing the November 11, 2020 collision.

38.     Non-party Patricia Sue Miller held a policy with GEICO providing bodily injury liability coverage in the amount of $25,000 per person, subject to an aggregate limit of $50,000 per collision.

39.     GEICO paid its available bodily injury liability limits of $25,000 to Plaintiff Lopez.

40.     Non-party Patricia Sue Miller did not have any additional bodily injury liability, personal injury umbrella liability, or any other insurance coverage which may pay for the damages suffered by Plaintiff Lopez as a result of the collision.

41.     At the time of the collision, Plaintiff Lopez held a policy with Defendant Liberty Mutual covering (1) her 2012 Dodge Ram; (2) her 2003 Toyota Avalon and (2) her 1997 Ford F150 under Policy No. AOV-261-513578-70 0 8, effective May 13, 2020 through May 13, 2021.  Coverage during this period consisted of, among other things, Uninsured Motorist Coverage and Underinsured Motorist Coverage on each vehicle in the amount of $15,000 per person, subject to an aggregate limit of $30,000 per collision.  A true and correct copy of the Liberty Mutual Declarations Page is attached hereto as **Exhibit B**.  A true and correct copy of the Liberty Mutual policy is attached hereto as **Exhibit C**.

42.     Defendant Liberty Mutual charged $49 for the Uninsured Motorist Coverage and $118 for the Underinsured Motorist Coverage on the 2012 Dodge Ram.  *See* Exhibit B, Liberty Mutual Declarations at 002-003.

43.    Defendant Liberty Mutual charged $47 for the Uninsured Motorist Coverage and $84 for the Underinsured Motorist Coverage on the 2003 Toyota Avalon. *See* Exhibit B, Liberty Mutual Declarations at 002-003.

44.    Defendant Liberty Mutual charged $21 for the Uninsured Motorist Coverage and $36 for the Underinsured Motorist Coverage on the 1997 Ford F150. *See* Exhibit B, Liberty Mutual Declarations at 002-003.

45.    Plaintiff Lopez is an "insured" under the terms and conditions of the Uninsured Motorist Coverage and Underinsured Motorist Coverage of the Liberty Mutual policy.

46.    Non-party Patricia Sue Miller's vehicle is an "underinsured motor vehicle" under the terms and conditions of the Liberty Mutual policy.

47.    On January 6, 2021, Plaintiff Lopez submitted a claim to Defendant Liberty Mutual seeking Underinsured Motorist benefits on all vehicles insured on the policy. The deadline to pay the available policy limits was January 27, 2021.

48.    Thereafter, Defendant Liberty Mutual paid the policy limits—$15,000.00—on **one of the vehicles** covered under Policy No. AOV-261-513578-70 0 8.

49.    Defendant Liberty Mutual failed and/or refused to pay the remaining policy limits properly owed on the other vehicles on the Liberty Mutual policy.

50.    Instead, Defendant Liberty Mutual disclaimed any additional Underinsured Motorist Coverage on the policy. Upon information and belief, Defendant Liberty Mutual alleged Stacked Underinsured Motorist Coverage was not available on the Liberty Mutual policy relying on policy language that fails to preclude Stacked Underinsured Motorist Coverage.

51.    The Limit of Liability clause provides:

**LIMIT OF LIABILITY**

**A.**  The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages,

including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

This is the most we will pay regardless of the number of:

1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the Schedule or in the Declarations; or
4. Vehicles involved in the accident.

*See* Exhibit C, Liberty Mutual Policy at 031.

52.     The Limit of Liability language does not preclude Stacked Uninsured Motorist Coverage or Stacked Underinsured Motorist Coverage. *See State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 331 (1995); *see also Heaton v. Metropolitan Group Prop. And Cas. Ins. Co.*, 2021 WL 6805629 (D.Ariz. Oct. 19, 2021).

53.     Even if the Limit of Liability language was sufficient to preclude Stacked Uninsured Motorist Coverage or Stacked Underinsured Motorist Coverage—it is not—the Limit of Liability language does not inform insureds of their right to select which coverage will apply in violation of A.R.S. § 20-259.01(H).

54.     Defendant Liberty Mutual did not advise Plaintiff Lopez, in writing, of her right to select which coverage would apply within 30 days of receiving notice of the collision as required by A.R.S. § 20-259.01(H).

55.     Accordingly, Stacked Uninsured Motorist Coverage and Stacked Underinsured Motorist Coverage is permitted even if the Limit of Liability language precluded stacking—which, it does not. *See* A.R.S. § 20-259.01(H); *see also Schwallie v. American Family Mut. Ins. Co.*, 2013 WL 4478697 (D.Ariz. Aug. 20, 2013).

56.     The Two or More Autos Insured clause provides:

**TWO OR MORE AUTOS INSURED; TWO OR MORE AUTO POLICIES**

> If this policy insures two or more autos or if any other insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto. In no event shall the limit of liability of two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to your (sic) or any **insured**.

*See* Exhibit C, Liberty Mutual Policy at 024.

57.    The Two or More Autos Insured clause does not preclude Stacked Uninsured Motorist Coverage or Stacked Underinsured Motorists Coverage. *See State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 331 (1995); *see also Heaton v. Metropolitan Group Prop. and Cas. Ins. Co.*, 2021 WL 6805629 (D.Ariz. Oct. 19, 2021).

58.    Even if the Two or More Autos Insured language was sufficient to preclude Stacked Uninsured Motorist Coverage or Stacked Underinsured Motorist Coverage—it is not—the Two or More Autos Insured language does not inform insureds of their right to select which coverage will apply in violation of A.R.S. § 20-259.01(H).

59.    Defendant Liberty Mutual did not advise Plaintiff Lopez, in writing, of her right to select which coverage would apply within 30 days of receiving notice of the collision as required by A.R.S. § 20-259.01(H).

60.    Accordingly, Stacked Uninsured Motorist Coverage and Stacked Underinsured Motorist Coverage is permitted even if the Tow or More Autos Insured language precluded stacking—which, it does not. *See* A.R.S. § 20-259.01(H); *see also Schwallie v. American Family Mut. Ins. Co.*, 2013 WL 4478697 (D.Ariz. Aug. 20, 2013).

**C.    Liberty Mutual's breaches of the contract and the implied covenant of good faith and fair dealing.**

61.    On prior Uninsured and Underinsured Motorist claims, Defendant Liberty Mutual conducted a coverage investigation to determine whether Stacked Uninsured

Motorist and Underinsured Motorist Coverage is available on their policies. Upon information and belief, after conducting the investigation, Liberty Mutual concluded its policies provide Stacked Uninsured Motorist Coverage and Stacked Underinsured Motorist Coverage.

62.    Indeed, upon information and belief, prior to receiving Plaintiff Lopez and Plaintiff Heisler's demands for all available policy limits, Defendant Liberty Mutual had already conceded its policy permitted Stacked Uninsured Motorist Coverage and Stacked Underinsured Motorist Coverage on at least one—but likely more than one—occasion.

63.    Upon information and belief, prior to receiving Plaintiff Lopez and Plaintiff Heisler's demands for all available policy limits, Defendant Liberty Mutual had already paid other insureds Stacked Uninsured Motorist Coverage and Stacked Underinsured Motorist Coverage on at least one—but likely more than one—occasion.

64.    Upon information and belief, Liberty Mutual amended the policy through Policy Form AUTO 2875 11 19. The amendment revised, among other things, the previous Two or More Autos Insured clause in response to multiple claims and lawsuits from its insureds seeking Stacked Uninsured Motorist and Underinsured Motorist Coverage in an effort to preclude coverage. The amendment was ineffective to preclude Stacked Uninsured Motorist Coverage and Stacked Underinsured Motorist Coverage.

65.    Upon information and belief, Liberty Mutual amended the Two or More Autos Insured clause again in an effort to preclude Stacked Uninsured Motorist Coverage and Stacked Underinsured Motorist Coverage.

66.    Upon information and belief, prior to that second amendment, when an insured person specifically sought Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage, Defendant Liberty Mutual paid stacked benefits on its policies without issuing a reservation of rights or advising its insured that it did not believe Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage was not available on at least one—but likely more than one—occasion.

HAGENS BERMAN
SOBOL SHAPIRO LLP
Attorneys at Law
Phoenix

67.     If, however, an insured person did not specifically request Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage, Defendant Liberty Mutual only paid the single vehicle limits rather than providing stacked benefits to its insureds.  Moreover, Defendant Liberty Mutual failed to advise those insureds of the availability of Stacked Uninsured Motorist Coverage and Stacked Underinsured Motorist Coverage on the policies.

68.     Upon information and belief, Defendant Liberty Mutual failed to conduct any investigation, let alone undertaking a reasonable coverage investigation, to determine whether Stacked Underinsured Motorist Coverage was available on Policy No. AOV-261-513578-70 0 8 and Policy No. AOV-261-558536-70 1 2.

69.     Defendant Liberty Mutual failed to advise Plaintiff Lopez that she may be entitled to Stacked Uninsured Motorist and Underinsured Motorist Coverage under the terms and conditions of Policy No. AOV-261-513578-70 0 8 in violation of Arizona law.

70.     To date, Plaintiff Lopez still has not been paid the Underinsured Motorist benefits she is entitled to receive under the terms and conditions of the Liberty Mutual policy.

71.     Defendant Liberty Mutual failed to advise Plaintiff Heisler that he may be entitled to Stacked Uninsured Motorist and Underinsured Motorist Coverage under the terms and conditions of Policy No. AOV-261-513578-70 0 8 in violation of Arizona law.

72.     To date, Plaintiff Heisler still has not been paid the Underinsured Motorist benefits he is entitled to receive under the terms and conditions of the Liberty Mutual policy.

73.     Upon information and belief, Defendant Liberty Mutual routinely sells Uninsured Motorist Coverage, as well as Underinsured Motorist Coverage, and benefits on multiple vehicles insured on the same policy, but refuses to pay Stacked Uninsured Motorist and Stacked Underinsured Motorist benefits in violation of the terms and conditions of Liberty Mutual policies and in violation of Arizona law.

74.    Upon information and belief, Defendant Liberty Mutual routinely sells Uninsured Motorist Coverage, as well as Underinsured Motorist Coverage, and benefits on multiple vehicles insured on the same policy, but refuses to inform its insureds of the availability of Stacked Uninsured Motorist and Stacked Underinsured Motorist benefits in violation of the terms and conditions of Liberty Mutual policies and in violation of Arizona law.

75.    Plaintiff Lopez and Plaintiff Heisler bring this declaratory judgment claim pursuant to the Declaratory Judgment Act (28 U.S.C. § 2201) and Rule 57 of the Federal Rules of Civil Procedure.

76.    Plaintiff Lopez and Plaintiff Heisler are "insureds" under the terms and conditions of the Uninsured Motorist Coverage and Underinsured Motorist Coverage of the Liberty Mutual policies.

77.    Plaintiff Lopez and Plaintiff Heisler contend they are entitled to Stacked Underinsured Motorist Coverage under the terms and conditions of the Liberty Mutual policy.

78.    Defendant Liberty Mutual, however, contends Underinsured Motorist Coverage is limited to one vehicle on the Liberty Mutual policies, and there is no additional Underinsured Motorist Coverage on the remaining vehicles on the Liberty Mutual policies.

79.    A dispute now exists between each Plaintiff and Defendant Liberty Mutual regarding the rights and obligations of the parties under the Liberty Mutual policy.

80.    Due to the dispute between the parties, Plaintiff Lopez and Plaintiff Heisler are entitled to a declaration of rights and responsibilities regarding the terms and conditions of the Liberty Mutual policies pursuant to the Arizona Declaratory Judgment Act.

81.    Plaintiff Lopez and Plaintiff Heisler seek a declaration from this Court that they are entitled to Stacked Underinsured Motorist Coverage on the Liberty Mutual policies.

82.     Defendant Liberty Mutual's failure to make a good faith offer and refusal to consider payment for Plaintiff Lopez and Plaintiff Heisler's Underinsured Motorist claims constitutes a *de facto* denial of benefits owed on the Liberty Mutual policies.

83.     Defendant Liberty Mutual's failure to make a good faith offer and refusal to pay the contractual Underinsured Motorist benefits owed on the policies is a breach of contract.

84.     As a direct and proximate result of the breach, Plaintiff Lopez and Plaintiff Heisler suffered direct and consequential damages including, but not limited to, the contractual Stacked Underinsured Motorist benefits owed under the terms and conditions of the Liberty Mutual policies.

85.     In every contract of insurance, there is inherent in it the covenant of good faith and fair dealing, which requires an insurer to, among other things, conduct a reasonable investigation, afford and makes its insured aware of all available coverages on the policy—even if they are not demanded—and treat all insureds with equal consideration.

86.     Upon information and belief, Defendant Liberty Mutual failed to conduct any investigation, let alone a reasonable investigation, into whether Stacked Underinsured Motorist Coverage is available on the Liberty Mutual policy.

87.     Instead, Defendant Liberty Mutual defaulted to its coverage position that Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage is unavailable on the Liberty Mutual policy.

88.     Defendant Liberty Mutual defaulted to its coverage position denying Stacked Uninsured Motorist Coverage and/or Underinsured Motorist Coverage knowing its default coverage position was wrong and was not supported by Arizona law.

89.     Defendant Liberty Mutual—after concluding Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage was available on its policies—undertook a claims handling practice of denying Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage to its insureds unless and until its insureds

specifically demanded stacked benefits in violation of the terms and conditions of the policy and Arizona law.

90.    Defendant Liberty Mutual—after concluding Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage was available on its policies—amended its policy in November 2019 in an attempt to preclude Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage.  Upon information and belief, after receiving additional claims for Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage, Defendant Liberty Mutual again concluded that Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage was available on its policies.

91.    Despite concluding Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage was available on its policies after the November 2019 amendment, Defendant Liberty Mutual undertook a claims handling practice of denying Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage to its insureds unless and until its insureds specifically demanded stacked benefits in violation of the terms and conditions of the policy and Arizona law.

92.    Defendant Liberty Mutual's actions put its own interests ahead of its insureds, including Plaintiff Lopez and Plaintiff Heisler, and failed to give equal consideration to their claims.

93.    Defendant Liberty Mutual's failure to adequately investigate coverage is a breach of the covenant of good faith and fair dealing.

94.    Defendant Liberty Mutual's failure to treat Plaintiff Lopez and Plaintiff Heisler with equal consideration is a breach of the covenant of good faith and fair dealing.

95.    Defendant Liberty Mutual's failure to make a good faith offer is a breach of the covenant of good faith and fair dealing.

96.    Defendant Liberty Mutual's failure to make reasonable efforts to alleviate the necessity of litigation is a breach of the covenant of good faith and fair dealing.

97.    Defendant Liberty Mutual's failure to pay the contractual Stacked Uninsured Motorist benefits owed under the terms and conditions of the Liberty Mutual policies is a breach of the covenant of good faith and fair dealing.

98.    Defendant Liberty Mutual's refusal to stack the available Underinsured Motorist Coverage is contrary to well-established Arizona law as well as the language of the Liberty Mutual policy.  As such, Defendant Liberty Mutual's coverage position is unreasonable, is not "fairly debatable," and instead places Defendant Liberty Mutual's own interests ahead of its insureds, including Plaintiff Lopez and Plaintiff Heisler.

99.    Defendant Liberty Mutual's refusal to provide Stacked Underinsured Motorist Coverage is a breach of the covenant of good faith and fair dealing.

100.    As a direct and proximate result of Defendant Liberty Mutual's breach of the covenant of good faith and fair dealing, Plaintiff Lopez and Plaintiff Heisler suffered damages.

101.    Upon information and belief, Defendant Liberty Mutual acted with a consistent pattern to undermine the security of its own insurance policy to the detriment of its insureds, including Plaintiff Lopez and Plaintiff Heisler, to the extent that it constitutes a conscious disregard of the substantial likelihood that such conduct is likely to cause harm and constitutes conduct sufficient to incur a penalty of punitive damages.

102.    Plaintiff Lopez and Plaintiff Heisler are, therefore, entitled to punitive damages in an amount sufficient to stop such conduct and deter such future conduct.

## III.    JURISDICTION AND VENUE

103.    All acts alleged herein arose from occurrences within the State of Arizona.

104.    The claims are subject to the jurisdiction of the U.S. District Court for the District of Arizona, and they request compensation in amounts above the minimum jurisdictional limits for this Court.

105.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

106.    This Court has personal jurisdiction over the parties because both parties have appeared and consented to this Court's jurisdiction.

107.    This Court has subject matter jurisdiction because this is a removed action under 28 U.S.C. § 1441.

## IV.    CLASS ALLEGATIONS

108.    Plaintiff Heisler brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure. He brings this action on behalf of himself and on behalf of those similarly situated pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

109.    The Class shall consist of individuals:

a.    Who are "insureds" on Liberty Mutual insurance policies issued, and in force, in Arizona from March 14, 2017 through present;

b.    Who were involved in a motor vehicle collision with an uninsured motor vehicle and/or an underinsured motor vehicle;

c.    Where the insurance policies issued by Defendant Liberty Mutual provided Uninsured Motorist Coverage and/or Underinsured Motorist Coverage on more than one vehicle;

d.    Where Defendant Liberty Mutual paid the policy limits of Uninsured Motorist Coverage and/or Underinsured Motorist Coverage on one vehicle, but either failed or refused to pay any Uninsured Motorist and/or Underinsured Motorist benefits on the remaining vehicles.

110.    The requirements of Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure are met as set forth below.

### A.    Numerosity

111.    "It is not necessary that the members of the class be so clearly identified that any member can be presently ascertained.  The court may draw a reasonable inference of the size of the class from the facts before it." *Sherman v. Griepentrog*, 775 F.Supp. 1383, 1389 (D.Nev. 1991) (internal citations omitted).

112.    Upon information and belief, Defendant Liberty Mutual routinely denies Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage to

its insureds. The class is so numerous that joinder of all class members would be impracticable, so the numerosity requirement is easily satisfied.

### B. Commonality

113. The commonality element "requires simply that there exist questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Parra v. Bashas, Inc.*, 536 F.3d 975, 978 (9th Cir. 2008).

114. The legal issues are not just shared, they are virtually identical. Specifically, the legal issue regarding whether Plaintiff Heisler and Class Members are entitled to Stacked Underinsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage on Liberty Mutual policies is identical. While there may be occasional changes to the policy language for each respective Class Member, the legal issue remains the same.

115. Moreover, the policy language for the Limit of Liability clause is **<u>identical for Uninsured and Underinsured Motorist coverage</u>**. *Compare* Exhibit B at Liberty Mutual Policy 024, 028 *with* Exhibit A at Liberty Mutual Policy 024, 031. Thus, there is no difference, from a legal standpoint, regarding whether stacking is permitted on Uninsured Motorist coverage or Underinsured Motorist coverage, *i.e.*, either stacking is permitted on both coverages, or it is not permitted on either coverage. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (commonality merely requires a common contention that is capable of classwide resolution, *i.e.*, determination will "resolve an issue that is central to the validity of each one of the claims in one stroke.").

### C. Typicality

116. Federal law provides: "[U]nder the rule's permissive standards, representative claims are 'typical' is they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

117.    Plaintiff Heisler's claims are reasonably coextensive with those of other Class Members.  He is insured on an insurance policy with Defendant Liberty Mutual insuring multiple vehicles with Underinsured Motorist Coverage.  Plaintiff Heisler was offered the available policy limits on one of the vehicles, but Defendant Liberty Mutual either failed or refused to pay any remaining uninsured motorist benefits on the remaining vehicles.

118.    Plaintiff Heisler's claims are also reasonably coextensive with those of Class Members as to Uninsured Motorist Coverage.  He is insured on an insurance policy with Defendant Liberty Mutual insuring multiple vehicles with Uninsured Motorist Coverage. His claim is typical of an uninsured motorist claim with regard to the legal issues that need to be decided.  Plaintiff Heisler was offered the available policy limits on one of the vehicles, but Defendant Liberty Mutual either failed or refused to pay any remaining benefits on the remaining vehicles.  *See Achziger v. IDS Prop. Cas. Ins. Co.*, 772 Fed.Appx. 416, 417-18 (9th Cir. 2019) (typicality satisfied when claims are reasonably co-extensive with those of class members even though different coverages may be involved for absent class members).

**D.    Adequacy**

119.    Under Arizona law, the Class Attorney must be qualified, experienced and reasonably capable.  Lead Plaintiffs cannot collude with the defendants and must not have interests that are obviously antagonistic to the interests of the class they seek to represent. The burden of proving inadequacy is on the defendant.  *See Lewis v. Curtis*, 671 F.2d 779, 788 (3rd Cir. 1982).

120.    To determine whether obvious antagonism of interests exists, Federal courts look to whether (1) a lead plaintiff is a spouse, family member, or employee of counsel; (2) if any counsel if a class member; (3) if there are unusual bonus fees for lead plaintiffs which would create a conflict with class members; (4) whether lead plaintiffs will promptly move for certification.  *See Lyon v. State of Arizona*, 80 F.R.D. 665, 667-68 (D.Ariz. 1978).

121.    None of the Class Attorneys are members of the Class.

HAGENS BERMAN
SOBOL SHAPIRO LLP
Attorneys at Law
Phoenix

- 18 -        FIRST AMENDED COMPLAINT

122.    Plaintiff Heisler requests appointment as a class representative in this action. Appointment of Plaintiff Lopez as a class representative is not sought at this time.

123.    Plaintiff Heisler is not a spouse, family member or employee of the Class Attorney.

124.    Plaintiff Heisler will promptly move for certification.

125.    No bonus fees or incentives have been promised to any Plaintiffs.

126.    The Class Attorneys are also qualified, experienced and reasonably capable, having litigated successfully in this area of law, and having been counsel in prior class actions.

**E.    Rule 23(b)(2)**

127.    Rule 23(b)(2) certification is appropriate if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

128.    Defendant Liberty Mutual has acted on grounds with general application to the Class Members: it has disclaimed Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage when its insureds have multiple vehicles with Uninsured Motorist and/or Underinsured Motorist Coverage.

129.    Moreover, the declaratory relief is appropriate respecting the class as a whole.

130.    The proposed Class, therefore, meets the requirements for certification under Rule 23(b)(2).

131.    Accordingly, Plaintiff Heisler requests this Court certify the declaratory judgment as a class action pursuant to Rule 23(b)(2).

**F.    Rule 23(b)(3)**

132.    Rule 23(b)(3) certification is appropriate if "questions of law or fact common to the members of the class predominate over any questions affecting individual class

members, and . . . a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

133. Common questions of law (*i.e.*, whether Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage are available) lie at the heart of this matter. Indeed, if Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage are not available, the remaining portions of the claims herein are moot.

134. With respect to superiority, Rule 23(b)(3) directs the Court to consider (1) the desirability of concentrating claims in this forum; (2) likely difficulties of management; (3) current claims by class members; (4) class members' interest in controlling their individual claims. *See* Fed. R. Civ. P. 23(b)(3).

135. An Arizona district court is a desirable forum as all Class Members were insured under Liberty Mutual policies issued in Arizona.

136. The difficulty in managing the Class is minimal as all policies were issued to Class Members in Arizona, the facts related to the coverage dispute are remarkably uniform, and the case turns on one legal issue.

137. While there may already be some pre-existing litigation involving Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage on Liberty Mutual policies, those cases, upon information and belief, are few and insufficient to make a class action unproductive—and moreover, they serve as evidence of Liberty Mutual's bad faith and exist only as an escape valve for its non-payment.

138. With respect to Class Members' individual interests in controlling the claims, "there is no additional advantage in individual members controlling the prosecution of separate actions." *See Hanlon*, *supra*, at 1023. Indeed, "[t]here would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *See id.*

139. The proposed Classes, therefore, meet the requirements for certification under Rule 23(b)(3).

140.    Accordingly, Plaintiff Heisler requests this Court certify the declaratory judgment, breach of contract and bad faith claims as a class action pursuant to Rule 23(b)(3).

## **RULE 26.2 TIER DESIGNATION**

WHEREFORE, Crystal Lopez and Kevin Heisler pray for Judgment against Liberty Mutual Personal Insurance Company as follows:

1.    On behalf of Kevin Heisler only, for certification of this case as a class action pursuant to Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure and the appointment of Kevin Heisler as representative of the Class;

2.    For breach of contract;

3.    For interest on the unpaid insurance benefits rightfully owed on its policies pursuant to A.R.S. § 20-462(A);

4.    For bad faith;

5.    For direct and consequential damages, in an amount to be proved at trial;

6.    For special damages, in an amount to be proved at trial;

7.    For general damages in a fair, just and reasonable sum in excess of the jurisdictional limits of this Court;

8.    For a declaration that Liberty Mutual Personal Insurance Company policies do not preclude stacking uninsured motorist coverage;

9.    For a declaration that Liberty Mutual Personal Insurance Company policies do not preclude stacking underinsured motorist coverage;

10.    For their costs incurred herein;

11.    For attorney's fees and taxable costs pursuant to A.R.S. §§ 12-341 and 12-341.01;

12.    For punitive damages in a fair, just and reasonable sum;

13.    For pre- and post-judgment interest at the prevailing statutory rate per annum; and

HAGENS BERMAN
SOBOL SHAPIRO LLP
Attorneys at Law
Phoenix

- 21 -        FIRST AMENDED COMPLAINT

1     14.    For such other and further relief as this Court may deem just and proper.

2

3    DATED this 29th day of October, 2025.

4                                           HAGENS BERMAN SOBOL SHAPIRO LLP

5

6                                           By: *s/ Robert B. Carey*
                                                Robert Carey
7                                               John DeStefano
                                                Tory Beardsley
8
                                            THE SLAVICEK LAW FIRM
9                                               Brett L. Slavicek
                                                James Fucetola
10                                              Justin Henry

11
                                            *Attorneys for Plaintiffs*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28